UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOUIS MATTHEWS,

       Petitioner,

                                     CASE NO. 14-11381

v.                                    HONORABLE NANCY G. EDMUNDS

DUNCAN MACLAREN,

       Respondent.

_____/

**OPINION AND ORDER
GRANTING IN PART THE APPLICATION TO AMEND [6]
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS [1],
DECLINING TO GRANT A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Louis Matthews has filed a *pro se* habeas corpus petition challenging his convictions for second-degree murder, Mich. Comp. Laws § 750.317, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  Petitioner raises several claims regarding the sufficiency of the evidence, his trial and appellate attorneys, the prosecutor, allegedly new evidence of actual innocence, and the jury instructions.  The State argues in an answer to the habeas petition that four of Petitioner's six claims are procedurally defaulted and that the state courts' rejection of Petitioner's claims was reasonable.  The Court agrees that Petitioner's claims do not warrant habeas corpus relief.  Accordingly, the habeas petition will be denied.

## I.  Background

Petitioner was charged in Wayne County, Michigan with two counts of first-degree murder, one count of being a felon in possession of a firearm, and one count of possessing a firearm during the commission of a felony.  Although there was only one victim, the prosecutor's theory was that Petitioner was guilty of both felony murder (murder committed during a robbery) and premeditated murder.

The charges arose from the fatal shooting of Darrell Benson in Detroit about 1:00 to 2:00 p.m. on Wednesday, November 19, 2008.  His body was discovered on Thursday, November 20, 2008.  The state court of appeals summarized the evidence at Petitioner's jury trial in Wayne County Circuit Court as follows:

> [T]he victim's family members testified that the victim was operating a recording studio in his basement.  The victim had $400 in his possession and pawned jewelry to obtain an additional $200.  The victim was planning to make a major purchase on Thursday.  On Wednesday, family members were unable to contact the victim.  On Wednesday morning, defendant dropped his girlfriend off at work at 6:30 a.m. so he could use her vehicle, and she testified that he picked her up late at 2:50 p.m. that day.  She testified that defendant, to her knowledge, did not have money earlier in the day, but when he picked her up, he repaid her $60 dollars that he had borrowed and had additional money despite paying that debt. The girlfriend also noticed that a black barrel gun was on the floor, and she told defendant, a parolee, that he could not drive in her car with a gun.  Defendant said that he would get rid of the gun.
>
> Defendant's girlfriend testified that defendant was arrested by Highland Park police on Wednesday evening.  The police told her to retrieve her vehicle, a Monte Carlo, or be charged impound fees.  When she picked up the vehicle, there were two mink coats in her back seat, but the gun was missing.  The mink coats were not in her vehicle when defendant picked her up                        from                        work.
>
> On Wednesday, the victim's neighbor pulled into his own driveway.  He was getting groceries out of his car when he observed a man pass by with an intimidating look on his face.  The man entered an older model Monte Carlo and sped off.  Early the next day, the neighbor noticed that the

victim's front door was cracked open despite the fact that it was cold. When he returned home that evening, another neighbor pointed out that the door was still cracked open.  Neighbors went to the front door and observed a body lying on the floor.  Police officers testified that the body had been dead for at least 24 hours in light of the dried blood that had seeped through the floor to the basement.

Defendant did not account for his whereabouts the entire day of the murder.  An FBI agent concluded that cellular phone records and towers indicated that defendant was in the vicinity of the murder on two occasions during the day.  Additionally, family members testified that the two mink coats that the victim owned were missing from his home.  A hood to one of the mink coats was found near the front door.

Defendant's girlfriend testified that defendant denied any involvement in the killing of the victim, his nephew.  However later, he admitted to seeing the victim on the day of the murder.  Additionally, defendant instructed his girlfriend to discard the two mink coats that she found in her vehicle, and she placed them in a dumpster.  She identified a photograph of one of the two mink coats that belonged to the victim.  Family members testified that defendant spoke of "hitting a lick" even if a family member was the intended target of the robbery or theft.  Defendant also asked family members to assist him in obtaining a gun.  Finally, family members testified that there was discord between defendant and the victim regarding defendant's son.

*People v. Matthews*, No. 295307, 2011 WL 2694612, at *1–2 (Mich. Ct. App. July 12, 2011) (unpublished).

Petitioner did not testify or present any witnesses at trial.  His defense was that the prosecution's case was weak, that the evidence was misleading, and that someone else must have broken into the victim's house and murdered him.

The deliberating jury informed the trial court more than once that it could not reach a unanimous decision.  On October 23, 2009, however, the jury found Petitioner guilty of two counts of second-degree murder, as a lesser-included offense of first-degree murder, and guilty, as charged, of felon in possession of a firearm and possession of a firearm during the commission of a felony.  At Petitioner's sentencing

on November 16, 2009, the trial court dismissed one count of murder and then sentenced Petitioner to sixty to one hundred years in prison for the murder conviction, two to five years in prison for the felon-in-possession conviction, and five years in prison for the felony-firearm conviction.

In an appeal as of right, Petitioner raised issues concerning the sufficiency of the evidence, his trial attorney's failure to call and fully cross-examine witnesses, and the prosecutor's remarks during closing arguments. At Petitioner's request, the Michigan Court of Appeals remanded Petitioner's case for an evidentiary hearing on his claim about trial counsel. The trial court held an evidentiary hearing and then denied Petitioner's request for a retrial. The Michigan Court of Appeals subsequently affirmed Petitioner's convictions, *see id.*, and on November 21, 2011, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Matthews*, 805 N.W.2d 207 (Mich. 2011).

On October 22, 2012, Petitioner filed a motion for relief from judgment in which he claimed to have new evidence that he was actually innocent of the murder for which he was convicted and sentenced. Petitioner also claimed that the trial court erred by instructing the jury that it could find him guilty of two counts of second-degree murder and that defense counsel was ineffective for not objecting to the instructions. Finally, Petitioner claimed that his trial and appellate attorneys were ineffective for failing to produce evidence demonstrating his innocence and that the prosecution suppressed the evidence. The state trial court denied Petitioner's motion, and the Michigan Court of Appeals denied leave to appeal the trial court's decision because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v.*

4

*Matthews*, No. 314691 (Mich. Ct. App. Sept. 23, 2013).   On February 28, 2014, the Michigan Supreme Court denied leave to appeal for the same reason.   *See People v. Matthews*, 843 N.W.2d 537 (Mich. 2014).

On April 3, 2014, Petitioner filed his habeas corpus petition under 28 U.S.C. § 2254, raising the six claims that he presented to the state court on direct appeal and on state collateral review.   *See* ECF No. 1.   On July 28, 2014, Petitioner filed an application to amend his habeas petition, ECF No. 6, and on October 13, 2014, the State filed an answer to the habeas petition, ECF No. 9.   Finally, on November 4, 2014, Petitioner filed a reply to the State's answer, ECF No. 11.

## II.  Preliminary Matters

### A.  The Application to Amend

In his application to amend his habeas petition, Petitioner expands on his initial claims, but also alleges that the prosecutor committed a fraud on the state court by leading a witness at the state evidentiary hearing and by soliciting perjury.   This is a new claim, and because Petitioner did not exhaust state remedies for the claim, as required by 28 U.S.C. § 2254(b)(1), the Court denies Petitioner's request to amend his habeas petition to include that claim.   The application to amend is granted as to the arguments that merely supplement Petitioner's initial claims.

### B.  The State's Procedural-Default Argument

The State argues in its answer to the habeas petition that Petitioner procedurally defaulted his third, fourth, fifth, and sixth claims regarding the prosecutor's arguments, the allegedly new evidence, the jury instructions, and allegedly undisclosed evidence. "[I]n the habeas context, a procedural default, that is, a critical failure to comply with

5

state procedural law, is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997). And analyzing whether Petitioner's claims are procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). The Court therefore "cut[s] to the merits here," *id.*, using the following standard of review.

### III.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

## IV. Analysis

### A. Sufficiency of the Evidence (claim one)

Petitioner alleges that there was insufficient evidence at trial to convict him of second-degree murder. He points out that there were no eyewitnesses to the crime, there was no physical evidence demonstrating that he caused the victim's death, and there was no "trace" evidence. Petitioner also points out that there was no testimony

regarding the caliber of the weapon he possessed[1] and that no one identified the fur coats seen in his girlfriend's car as the victim's coats.[2]   Additionally, according to Petitioner, the prosecutor's theory that the murder occurred about 1:00 or 2:00 p.m. on November 19, 2008, was not supported by the medical examiner's testimony.[3] Petitioner concludes that the jury's verdict was improperly based on unsupported assumptions and unreasonable inferences.

The Michigan Court of Appeals adjudicated Petitioner's claim on the merits during the direct appeal.   It held that, although Petitioner's murder conviction was premised on circumstantial evidence and inferences arising from the evidence, there was sufficient evidence to support the murder conviction.

### 1. Clearly Established Federal Law

The Supreme Court has held "that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."   *In re Winship*, 397 U.S. 358, 364 (1970).   Following *Winship,* the critical inquiry on review of a challenge to the sufficiency of the evidence supporting a criminal conviction is

---

[1]   The bullets removed from the victim's head during the autopsy were .32 caliber bullets.  (10/16/09 Trial Tr. at 42.)  There was no gun in evidence to compare to the bullets, and Petitioner's girlfriend was unable to describe the gun that she saw in her car after Petitioner borrowed the car.

[2]   Petitioner's girlfriend testified at trial that she destroyed the coats in her car at Petitioner's request after the murder.  She identified a photograph of a coat as something that looked like one of the coats Petitioner had asked to discard.  (10/15/09 Trial Tr. at 227, 243.)

[3]   The physician testified that it is not possible for medical examiners to determine the exact time of a homicide victim's death.  (10/16/09 Trial Tr. at 25-26.)

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citations and footnote omitted) (emphases in original).

"Circumstantial evidence, if strong enough to convince the trier of the facts of a defendant's guilt beyond a reasonable doubt, is sufficient to sustain a finding of guilt." *United States v. Burch*, 313 F.2d 628, 629 (6th Cir. 1963)(citing *Holland v. United States*, 348 U.S. 121, 139-40 (1954), and *United States v. Comer*, 288 F.2d 174, 175 (6th Cir. 1961)).  The Supreme Court, moreover has made clear that "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."  *Coleman v. Johnson*, 132 S. Ct. 2060, 2062 (2012) (*per curiam*). First,

> "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, ——, 132 S.Ct. 2, 4, 181 L.Ed.2d 311 (2011) (*per curiam*).  And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " *Ibid.* (quoting *Renico v. Lett*, 559 U.S. 766, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Id.* at 2062; *see also Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (stating that, because both *Jackson* and AEDPA applied to the petitioner's claim, the law commanded deference at two levels:  deference to the trier-of-fact's verdict, as contemplated by *Jackson*, and deference to the state court's consideration of the trier-of-fact's verdict, as dictated by AEDPA).

The *Jackson* standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n.16.  Petitioner contests his conviction for second-degree murder.  In Michigan,

> [t]he elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse.  *People v. Bailey*, 451 Mich. 657, 669, 549 N.W.2d 325 (1996).
>
> Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.  *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980).

*People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998).  "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented."  *People v. Kanaan*, 751 N.W.2d 57, 73-74 (Mich. Ct. App. 2008).

## 2.  Application

The disputed issues at Petitioner's trial were whether he caused the victim's death and whether he had the required intent.  The prosecutor presented evidence that:

10

> [Petitioner] had made statements regarding his intent to rob an individual to obtain money even if a family member was the intended target and his attempt to obtain a gun.  There was circumstantial evidence that the victim was earning income from his basement recording studio.  [Petitioner] was in the vicinity of the murder and was later seen with a gun and two mink coats that purportedly belonged to the victim.  Once arrested, [Petitioner] asked his girlfriend to discard the two mink coats allegedly because he would be incarcerated for two years, but to keep his clothes.  [Petitioner] later made admissions to his girlfriend that he saw the victim on the day of the murder despite earlier denials.

*Matthews*, 2011 WL 2694612, at *2.

A rational trier of fact could have concluded from this evidence taken in the light most favorable to the prosecution that Petitioner killed the victim.  A rational trier of fact also could have concluded that Petitioner possessed the intent to kill. There was testimony that he sought help in acquiring a gun and that he possessed a gun at approximately the time when the victim was believed to have been killed.  Additionally, the victim was shot several times in the back of his head.

Because a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the state appellate court's conclusion – that there was sufficient circumstantial evidence to support Petitioner's murder conviction – was not contrary to, or an unreasonable application of, *Jackson*.  The Court therefore declines to grant relief on Petitioner's challenge to the sufficiency of the evidence at trial.

## B.  Trial Counsel's Cross-Examination of Witnesses (claim two)

Petitioner alleges that his trial attorney failed to produce two defense witnesses at trial and failed to fully cross-examine three prosecution witnesses.  Petitioner

contends that counsel's failures and omissions deprived him of a substantial defense and his right to effective assistance of counsel.

The state trial court held an evidentiary hearing on Petitioner's claim about his trial attorney's failure to call defense witnesses at trial. The court concluded after the hearing that defense counsel's performance was not deficient and that counsel's omissions did not amount to ineffective assistance and did not deprive Petitioner of a substantial defense. (10/15/10 Evidentiary Hr'g Tr. at 92.) The Michigan Court of Appeals agreed on direct appeal that defense counsel was not ineffective.

### 1. Clearly Established Federal Law

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' "

12

but "[t]he likelihood of a different result must be substantial, not just conceivable."

*Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

Review of an ineffective-assistance-of-counsel claim is "doubly deferential" under

AEDPA,

> because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, at ——, 134 S.Ct., at 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

### 2. Application

#### a. Failure to Call Two Defense Witnesses

Petitioner claims that his trial attorney should have called Charles Taylor and

Annie Ashford as defense witnesses to establish an alibi defense. Mr. Taylor

mentioned in a pretrial statement to the police that he spoke with the victim between

8:00 p.m. and 11:00 p.m. on November 19, 2008, and Ms. Ashford told the police that

she heard a sound like a "pow" or a "bang" at 3:30 a.m. on November 20, 2008.

Because there was evidence that Petitioner was in police custody on an unrelated

charge at approximately 8:00 p.m. on November 19, 2008, Petitioner asserts that Mr.

Taylor's and Ms. Ashford's statements would have supported an alibi defense.

Petitioner's trial attorney testified at the evidentiary hearing in state court that he

mailed a subpoena to Mr. Taylor at an address provided by the prosecutor and that

Taylor failed to show up for trial. Trial counsel also asked a trusted investigator to try to

find Taylor, but the investigator conducted a two-day search and was unable to find Taylor.  Although trial counsel admitted at the hearing that he did not seek a bench warrant or ask the trial court for help in bringing Mr. Taylor to court, he testified that he did not think he could in good faith ask for the court's assistance.  (10/15/10 Evidentiary Hr'g Tr. at 8-10, 13-18.)

Mr. Taylor testified at the evidentiary hearing that he did not receive a subpoena for Petitioner's trial, which occurred in October of 2009.  But he explained to the trial court that he moved into the victim's residence in January of 2009 (after the murder) and that he moved to a different address in the summer of 2009, but that he did not provide the prosecution with his change of address because he did not know he was involved in the case.  (*Id.* at 21-22, 32-34, 36-37.)  In light of this testimony and the testimony of Petitioner's trial attorney, the Court concludes that defense counsel was not ineffective for failing to produce Mr. Taylor as a witness.

Even if defense counsel's performance was deficient, the deficient performance did not prejudice the defense because Mr. Taylor testified at the evidentiary hearing that he was not sure whether he called the victim between 8:00 p.m. and 11:00 p.m. on November 19, 2008.  He claimed that he had estimated the time when he spoke to the police and that he currently thought he last spoke with the victim at 12:55 p.m. on November 19, 2008.  He also stated that, if he had testified at trial, his testimony would have been the same as what it was at the evidentiary hearing.  (*Id.* at 23-25, 28-30, 35.)

As for Annie Ashford, the victim's neighbor, she informed the police that somebody kept knocking on the victim's door between 4:00 p.m. and 9:00 p.m. on November 19, 2008.  She also informed the police that she heard a sound like a "pow"

or a "bang" about 3:30 a.m. on November 20, 2008.   *See* Pet. for Writ of Habeas Corpus, ECF No. 1, Pg ID 102.

Petitioner's appellate attorney did not question Petitioner's trial attorney at the evidentiary hearing about his failure to call Ms. Ashford as a witness, but the appellate attorney stated that, after he requested an evidentiary hearing, he concluded that Ms. Ashford would not help the defense.  The appellate attorney noted that, in Ms. Ashford's statement to the police, she did not identify the noise she had heard and she did not say where the noise originated.  (10/15/10 Evidentiary Hr'g Tr. at 103-04.)

Additionally, Ms. Ashford's observation that someone kept knocking on the victim's door between 4:00 p.m. and 9:00 p.m. on November 19, 2008, suggested that the victim was unresponsive and already dead by then.  As such, Ms. Ashford's statement tended to support the prosecution's theory that the murder occurred during the early afternoon of November 19, 2009.

For the foregoing reasons, the Court concludes that defense counsel was not ineffective for failing to produce Mr. Taylor or Ms. Ashford as defense witnesses.

### b.  The Cross-Examination of Three Prosecution Witnesses

### i.  Terry Henderson and Officer Jones

Petitioner asserts that his trial attorney was ineffective for failing to fully cross-examine Ms. Terry Henderson and Officer Jones.  Petitioner contends that defense counsel should have questioned Ms. Henderson about the timing of a police officer's call to her on November 19, 2008, suggesting that she pick up her car, which Petitioner had been driving.  The timing of the police officer's call was relevant information because it established the approximate time that Petitioner was taken into custody.

This, in turn, was relevant to the question of whether Petitioner could have committed the murder.

At the preliminary examination, Ms. Henderson claimed that a police officer called her about 6:30 or 7:00 p.m. on November 19, 2008, and asked her to pick up her car. (5/13/09 Prelim. Examination Tr. at 40.) At trial, she testified that the police called her about 7:30 or 7:45 p.m. (10/15/09 Trial Tr. at 222), and Officer Jones testified that he arrested Petitioner about 8:30 p.m. on November 19, 2008 (*id.* at 89-90).

The differences in the testimony as to when the police arrested Petitioner and called Ms. Henderson to pick up her car were not significant because the prosecutor's theory was that the murder occurred earlier that afternoon when Petitioner was still free. The Court therefore concludes that defense counsel was not ineffective for failing to more fully cross-examine Ms. Henderson and Officer Jones regarding the time of Petitioner's arrest.

### ii.  Officer Sullivan

Petitioner claims that his trial attorney should have questioned Officer Sullivan about Charles Taylor's witness statement that he spoke with the victim about 8:00 p.m. or later on November 19, 2008. Petitioner also maintains that defense counsel could have admitted Mr. Taylor's statement in evidence under the residual or "catch-all" exception to the hearsay rule.

Defense counsel did question Officer Sullivan about taking a statement from Mr. Taylor, and he did ask Officer Sullivan whether the officer had collected Mr. Taylor's cell phone records. But defense counsel did not ask Officer Sullivan whether Mr. Taylor had said he spoke with the victim after 8:00 p.m. on November 19, 2008, when Petitioner

16

was in custody.  Nevertheless, there was substantial evidence at trial that Petitioner killed the victim well before 8:00 p.m. on November 19, 2008.

The victim's mother, for example, testified that she and other family members were unable to contact the victim after 1:00 p.m. on November 19, 2008, even though the victim was expecting his mother to visit him.   (10/14/09 Trial Tr. at 31-32.) Petitioner's girlfriend testified that Petitioner had a gun and money when he picked her up about 2:50 p.m. that day.  (10/15/09 Trial Tr. at 215-20.)  And Petitioner's cell phone records indicated that he was near the victim's home about 1:30 p.m. on November 19, 2008.  (*Id.* at 108-09.)  All of this evidence tended to refute Mr. Taylor's statement to Officer Sullivan that he last talked with the victim between 8:00 p.m. and 11:00 p.m. on November 19, 2008.   Therefore, defense counsel's failure to attempt to admit Mr. Taylor's statement in evidence and his failure to question Officer Sullivan about Mr. Taylor's statement did not prejudice the defense.

To conclude, Petitioner has not established that his attorney's performance was deficient and that the deficient performance prejudiced the defense.  Thus, the state courts' rejection of Petitioner's claims about trial counsel was not contrary to, or an unreasonable application of, *Strickland*, and relief is not warranted on Petitioner's second claim.

## C.  The Prosecutor's Rebuttal Argument (claim three)

Petitioner alleges next that the prosecutor made several improper remarks about defense counsel during her rebuttal argument.  Petitioner contends that the remarks deprived him of a fair trial and that defense counsel was ineffective for failing to object to the remarks.

The Michigan Court of Appeals reviewed Petitioner's claim on direct appeal for "plain error" because Petitioner did not object or request a curative instruction at trial. The Court of Appeals then concluded that Petitioner had failed to demonstrate "plain error affecting substantial rights" because the prosecutor's argument was a response to defense counsel's arguments. The Court of Appeals also noted that the trial court instructed the jurors that the attorneys' statements did not constitute evidence.

### 1.  Clearly Established Federal Law

On habeas review, "[c]laims of prosecutorial misconduct are reviewed deferentially." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).

> [I]t "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642, 94 S.Ct., at 1871.

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Attorneys may not "make unfounded and inflammatory attacks on the opposing advocate," *United States v. Young*, 470 U.S. 1, 9 (1985), but "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

### 2.  Application

The contested remarks in this case were made during the prosecutor's rebuttal argument. The prosecutor stated that defense counsel had "a bag of tricks" and was trying to distract the jury from the evidence. (10/16/09 Trial Tr. at 106-07, 109, 111-12.)

A prosecutor's comments "that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992) (citing *Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991)). And comments about red herrings, smoke screens, distractions, and distortions are challenges to the merits of the defendant's defense, rather than a personal attack or slander of defense counsel. *See United States v. Graham*, 125 F. App'x 624, 633-35 (6th Cir. 2005); *see also United States v. Vassar*, 346 F. App'x 17, 25 (6th Cir. 2009) (noting that the Sixth Circuit Court of Appeals has approved a prosecutor's use of the term "red herring," which it has defined as "a fallacious argument that distracts from the truth").

Here, the disputed comments were not overly excessive, and they did not impair the jurors' search for the truth because they were a fair response to defense counsel's argument that the prosecutor had a "sneaky theory," was misleading the jury, and was misstating the evidence. Defense counsel also described the prosecution's case as "weak," "crap," and "bull." (10/16/09 Trial Tr. at 98, 101-02, 105.) Defense counsel asserted that the prosecutor's case was weak because the car in question was blue, not gray, and because someone named Duke could have killed the victim. Defense counsel also stated that, for the jury to believe the prosecutor's theory of the case, the jury would have to conclude that Petitioner was so desperate for money that he killed

the victim to obtain a coat with no value and yet failed to take items of more value. (10/16/09 Trial Tr. at 95-97, 101-03.)

In response, the prosecutor urged the jurors not to be distracted by defense counsel's comments about the value of the coats, about things that were not taken from the victim's home, and about the possibility that someone else broke into the victim's home and killed him. The remarks were a fair response to defense counsel's closing argument and, therefore, proper. *Angel v. Overberg*, 682 F.2d 605, 607-08 (6th Cir. 1982) (*en banc*) (citing *DeChristoforo*, 416 U.S. at 637). Furthermore, the trial court, instructed the jurors that the attorneys' closing arguments were not evidence (10/16/09 Trial Tr. at 120), and jurors are presumed to follow their instructions. *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

For all the foregoing reasons, the Court concludes that the prosecutor's remarks were proper. And because the remarks were proper, defense counsel was not ineffective for failing to object to them. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013). The Court therefore declines to grant relief on Petitioner's prosecutorial-misconduct claim.

## D. Actual Innocence (claim four)

Petitioner asserts that the evidence at trial and new evidence prove he is actually innocent of murder. To support this claim, Petitioner has attached to his habeas petition witness statements, affidavits suggesting that there was no animosity between Petitioner and the victim, an affidavit stating that rap artists or drug dealers bragged about killing the victim, and papers purporting to be the victim's phone records.

20

The witness statements are not new evidence, and to the extent Petitioner is reiterating his claim that the evidence at trial was insufficient, his claim lacks merit for the reasons given in section IV.A. of this opinion.  As for the contention that new evidence proves Petitioner is actually innocent of the murder for which he was convicted and sentenced, the Supreme Court has stated that claims of actual innocence based on newly discovered evidence are not a basis for federal habeas relief "absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.*

Furthermore, Petitioner's new evidence is unpersuasive.  The affidavits on which Petitioner relies "are disfavored because the affiants' statements [were] obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Id.* at 417.  In addition, one of the affidavits is based on hearsay from a state prisoner.

Petitioner nevertheless contends that the victim's cell phone records are proof of his innocence because they prove the victim was alive and talking on the phone during the late afternoon and evening on November 19, 2008, and also on November 20, 2008, the day after Petitioner was taken into police custody for an unrelated incident. The cell phone records, however, reflect incoming and outgoing calls for mobile number 313-414-2184, which was assigned to Edward Hayes.  *See* Pet. for Writ of Habeas Corpus, ECF No. 1, Pg ID 105.  The victim was Darrell Benson, and his name does not appear on the records or on the cover letter from the mobile cell phone carrier to Police

Officer Lance Sullivan, who subpoenaed the records.  Furthermore, the records reflect an outgoing call from mobile number 313-414-2184, as late as December 4, 2008, *see id.*, Pg ID 109 (last entry on the page), even though the victim's body was discovered on November 20, 2008.  Thus, the records on which Petitioner relies could not possibly reflect the victim's calls, and they do not establish Petitioner's innocence.

Finally, the evidence at trial strongly suggests that Petitioner is guilty of murdering the victim.  The trial court, in fact, found no merit in Petitioner's argument about the cell phone records because there was other significant testimony proffered against Petitioner and because there were independent indicia and material evidence that was more than sufficient to prove Petitioner's guilt.

Petitioner has not met the "extraordinarily high" threshold needed for establishing a claim of actual innocence.  *Herrera*, 506 U.S. at 417. The Court therefore declines to grant relief on Petitioner's fourth claim.

**E.  The Jury Instructions** (claim five)

Petitioner claims that the trial court erred by instructing the jury that it could find him guilty of two counts of second-degree murder when there was only one murder. Additionally, Petitioner claims that defense counsel was ineffective for not objecting to the trial court's instruction.

The state trial court reviewed this claim during post-conviction proceedings and concluded that Petitioner not only failed to preserve his claim for appellate review, but that his claim lacked merit.  The court determined that its jury instructions were thorough and complete and that Petitioner had failed to show prejudice resulted from counsel's failure to object to the instructions.

22

The question on habeas review of a jury instruction "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' " *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  To obtain habeas relief, the instruction must have infused the trial with such unfairness as to deprive the petitioner of due process of law.  *Id.* at 75 (quoting *Lisenba v. California*, 314 U.S. 219, 228 (1941)).  Stated differently, "[t]o warrant habeas relief, 'jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair.' " *Buell  v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001) (quoting *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000)).

The prosecutor's theory was that Petitioner was guilty of first-degree premeditated murder or murder committed during the commission of a felony.  To reflect that theory, the prosecutor charged Petitioner with two counts of murder, one count for premeditated murder and one count for felony murder.  The trial court instructed the jury on both counts, as well as, two counts of second-degree murder as an included offense of first-degree murder.

In Michigan, a prosecutor is "free to use alternative statutory theories to support a single murder," but because there was only one murder in this case, "[t]he prosecutor should have brought a single charge of murder in a single count, listing under it the alternative theories." *People v. Herndon*, 633 N.W.2d 376, 392 (2001); *see also People v. Bigelow*, 581 N.W.2d 744, 745-46 (Mich. Ct. App. 1998) (noting that "dual convictions arising from the death of a single victim violate double jeopardy").  Nevertheless, at Petitioner's sentencing, the prosecutor moved to dismiss one count of murder, and the

trial court granted the prosecutor's motion. (11/16/09 Sentencing Tr. at 17, 20.)   The judgment of sentence also reflects one conviction for second-degree murder.   *See People v. Matthews*, Judgment of Sentence, ECF No. 10-19, Pg ID 1563.   Therefore, Petitioner's claim about the trial court's jury instruction is moot, as there is no longer "an actual injury that is capable of being redressed by a favorable judicial decision."   *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009) (quoting *Brock v. United States Dep't of Justice*, 256 F. App'x 748, 750 (6th Cir. 2007)).   And because the error was corrected, defense counsel's allegedly deficient performance did not prejudice Petitioner.   Habeas relief is not warranted on Petitioner's claim about the jury instructions.

**F.  Trial and Appellate Counsel** (claim six)

Petitioner's sixth and final claim alleges that his trial and appellate attorneys were ineffective for failing to obtain the victim's cell phone records and the prosecutor committed misconduct by withholding the evidence.  The state trial court addressed and rejected this issue in its order denying Petitioner's motion for relief from judgment.

A portion of Petitioner's claim about trial counsel raises the same issue that Petitioner presented in his second claim:  whether trial counsel was ineffective for failing to call Charles Taylor and Annie Ashford as alibi witnesses.  As the Court pointed out above, defense counsel was unable to locate Mr. Taylor, and Mr. Taylor would not have been a good alibi witness because he claimed at the evidentiary hearing that he was not sure when he last spoke to the victim.  Ms. Ashford also would not have been a good alibi witness, because her statement to the police about the noise she heard early on November 20, 2008, was vague.  Therefore, trial counsel was not ineffective for failing to produce either Mr. Taylor or Ms. Ashford as defense witnesses.

24

Petitioner also has failed to show that his appellate attorney was ineffective. The proper standard for evaluating Petitioner's claim about appellate counsel is the standard enunciated in *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Petitioner must show (1) that counsel objectively unreasonable in failing to discover and argue nonfrivolous issues and (2) a reasonable probability that, but for counsel's unreasonable omissions, Petitioner would have prevailed on appeal. *Id.* at 285.

Petitioner's first three habeas claims raise the same issues and use the same brief that appellate counsel presented to the Michigan Court of Appeals on direct review. Petitioner's claim fourth and fifth claims about the jury instructions and Petitioner's alleged innocence lack merit for the reasons given above. Therefore, appellate counsel was not ineffective for failing to raise those claims. "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001).

Petitioner nevertheless asserts that his trial and appellate attorneys failed to obtain the victim's phone records to show that the victim made and received calls on the evening of November 19, 2008, and early on November 20, 2008. Because Petitioner was in police custody on an unrelated matter by then, Petitioner contends that the records prove he did not kill the victim. In a related claim, Petitioner asserts that the prosecution withheld the victim's phone records.

Petitioner's contention that his attorneys did not obtain the victim's cell phone records and that the prosecutor suppressed the records is belied by the record and by Petitioner's own admissions. Petitioner admits in his application for leave to amend his habeas petition that his trial attorney had the victim's phone records. *See* Application to

25

Amend Petitioner's Original Writ of Habeas Corpus, ECF No. 6, Pg ID 123 and 125. Both the prosecutor and Petitioner's appellate attorney also appeared to be aware of the victim's phone records.  (10/15/10 Evidentiary Hr'g Tr. at 95-97).  It is obvious then that the prosecutor did not suppress the records.

To the extent Petitioner is claiming that his attorneys should have used the cell phone records that Petitioner attached to his habeas petition to prove his innocence, his claim lacks merit because those records appear to be for someone other than the victim.  The records do not prove that the victim was still alive after Petitioner was arrested, and they do not prove that Petitioner is innocent of murdering the victim. Therefore, Petitioner's attorneys were not ineffective for failing to make use of the records.  Habeas relief is not warranted on Petitioner's sixth claim.

## V.  Conclusion

The state-court orders and opinions in this case were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts.  The orders and opinions clearly were not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  The Court therefore DENIES the petition for writ of habeas corpus.

## VI. Denying a Certificate of Appealability;
### Granting Leave to Proceed *In Forma Pauperis* on Appeal

Before Petitioner may appeal this Court's decision, a district or circuit judge must issue a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When, as here, "a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not debate the Court's assessment of Petitioner's constitutional claims. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal if he appeals this decision, because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

s/ Nancy G. Edmunds
NANCY G. EDMUNDS
UNITED STATES DISTRICT JUDGE

Dated:October 27, 2016